UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JOYCE LIVESAY | ) |
| | ) |
| V. | ) NO. 2:10-CV-32 |
| | ) |
| HAMBLEN COUNTY, TENNESSEE, | ) |
| OTTO PURKEY, and DEXTER | ) |
| MORRIS, JR. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff has filed an action under 42 U.S.C. § 1983 against Dexter Morris, a former deputy with the Hamblen County Sheriffs Department; against the former Sheriff of Hamblen County, Otto Purkey; and against the county itself.[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to have this case tried by the magistrate judge.

The crux of plaintiff's complaint is that on August 24, 2005, Dexter Morris, while on duty as a deputy sheriff, and acting under color of law, raped her. She filed her suit on February 17, 2010, four and one-half years after she was raped by Morris. With regard to her claim against the Sheriff Otto Purkey and the county, she alleges:

1. Both before and after August 20, 2005, the Hamblen County Sheriffs Department had a custom and policy to ignore sexual misconduct committed by its officers, including a policy or custom to ignore citizens' complaints of sexual misconduct by those officers;

---

[1] Plaintiff has chosen to sue both Otto Purkey and Dexter Morris in their individual capacities.

2. Sheriff Otto Purkey, as the final decision maker for the Hamblen County Sheriffs Department, was deliberately indifferent to reports of Dexter Morris's sexual misconduct;

3. Sheriff Purkey had notice that Dexter Morris had sexually assaulted women in the custody of the Hamblen County Sheriffs Department, but nevertheless failed to discipline or terminate Morris;

4. Hamblen County, by virtue of the actions of its Sheriff, failed to supervise and appropriately discipline its officers pursuant to recognized standards, policies, and procedures of police officers of the state of Tennessee; and

5. The county, as a result of Sheriff Purkey's actions (or inactions), was on notice that its discipline of its police officers were deficient and likely to cause injury.

Otto Purkey and the county have moved for summary judgment on the ground that plaintiff's suit was filed too late, and is barred by Tennessee's one-year statute of limitations.

Summary judgment is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). The non-moving party must be indulged with all possible favorable inferences from the facts which otherwise might be undisputed, *Plott v. Gen. Motors Corp.*, 71 F.3d 1190 (6th Cir. 1995).

A § 1983 action must be filed within the state statute of limitations applicable to personal injuries. *Trzebuckowski, et al., v. City of Cleveland, et al.*, 319 F.3d 853, 855 (6th

2

Cir. 2003). In Tennessee, that statute is Tenn. Code Ann. § 28-3-104(a)(3), and it provides for a one-year period in which to file suit for personal injuries.

Plaintiff did not file her suit until more than one year had elapsed after Morris raped her. But *when* the statute of limitations begins to run is a matter of federal law. *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984). In the case of a § 1983 action, "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id*., at 273. And, a "plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id*. The issue generated by the motion for summary judgment is, when did the statute of limitations begin running as to Otto Purkey and the county?

It is undeniable that Morris raped plaintiff on August 24, 2005. He was indicted in this court, partly on account of that crime, and he was convicted. He is now serving a sentence in federal prison. And, to state the obvious, plaintiff undeniably knew that she had been raped on August 24, 2005. However, that does not necessarily commence the running of the statute of limitations with respect to Sheriff Purkey and the county because, as we all know, the county may not be held vicariously liable under § 1983 for the actions of Morris. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691-92 (1961). The county can be held liable only for its own actions or omissions that amount to "deliberate indifference" to the rights of the plaintiff. *Id*. That deliberate indifference can be manifested in several ways, one of which is a failure to train, discipline or supervise. *City of Canton v. Harris*, 489 U.S. 378

3

(1989). A plurality of the justices in *City of Oklahoma City v. Tuttle*, 471 U.S. 80 (1985), concluded that "considerably more proof than [a] single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation." *Id.*, at 823. In other words, municipal liability based on a policy of inadequate training or discipline cannot be derived from a single incident of police misconduct. As of August 24, 2005, plaintiff knew she had a cause of action against Dexter Morris, but there was nothing to reasonably indicate that the Sheriff and County had committed an antecedent tort by failing to discipline Morris. Therefore, the statute of limitations did not begin to run as to the Sheriff and County by virtue of Morris's assault of plaintiff.

Plaintiff learned that there were other victims of Dexter Morris from a criminal complaint filed against him in this court; plaintiff, identified only by her initials, was the subject of count one. Another victim, "N.E." was the subject of count two. The affidavit of the FBI agent filed in support of the criminal complaint mentioned yet another victim, "R.L." That criminal complaint was unsealed on September 24, 2008. Defendants insists that the complaint put plaintiff on notice that the Sheriff, and therefore the county, were deliberately indifferent to her rights. In other words, it is defendants' argument that by virtue of the criminal complaint, the plaintiff then knew or had reason to know of the injury which is the basis of her action against the county and the Sheriff.

It is plaintiff's theory that the county is liable to her based on its policy or custom of

4

inadequate training, supervision, or discipline of its deputy sheriffs, and that she had no way to know of those inadequacies until some time after Morris' trial. Plaintiff says that she did not learn of the identify of "R.L." until after Morris's criminal trial had ended, and only then because the "witness coordinator" agreed to contact "R.L." to tell her that plaintiff would like to speak to her. "R.L." did call plaintiff some time in late June 2009. During that conversation, R.L. told plaintiff that while she was an inmate in the Hamblen County Jail, and Morris was a jailer, he sexually abused and then threatened her. R.L. said that she submitted a complaint to the Sheriff, but the Sheriff, rather than investigate her complaint, not only peremptorily rejected it, but threatened her with criminal prosecution and thereafter promoted Morris to the position of patrol officer, a position he used to facilitate the rape of both plaintiff and "N.E." Plaintiff insists that is was this information imparted by "R.L." which commenced the running of the statute of limitations.

In August 2006, plaintiff learned that Morris had assaulted another woman.[2] Then she learned of at least two other victims of Morris in September 2008 when the criminal complaint was filed. Thus, by that date, plaintiff knew that Morris had sexually assaulted at least three, and perhaps four, women. Defendant argues that this knowledge triggered plaintiff's responsibility to make an inquiry regarding possible culpability of the Sheriff and the County. Plaintiff, however, argues that if she had then filed suit against the Sheriff and County based only on the information that Morris had assaulted three or four women, she

---

[2]Affidavit, Doc. 54-1, ¶ 7.
5

inadequate training, supervision, or discipline of its deputy sheriffs, and that she had no way to know of those inadequacies until some time after Morris' trial. Plaintiff says that she did not learn of the identify of "R.L." until after Morris's criminal trial had ended, and only then because the "witness coordinator" agreed to contact "R.L." to tell her that plaintiff would like to speak to her. "R.L." did call plaintiff some time in late June 2009. During that conversation, R.L. told plaintiff that while she was an inmate in the Hamblen County Jail, and Morris was a jailer, he sexually abused and then threatened her. R.L. said that she submitted a complaint to the Sheriff, but the Sheriff, rather than investigate her complaint, not only peremptorily rejected it, but threatened her with criminal prosecution and thereafter promoted Morris to the position of patrol officer, a position he used to facilitate the rape of both plaintiff and "N.E." Plaintiff insists that is was this information imparted by "R.L." which commenced the running of the statute of limitations.

In August 2006, plaintiff learned that Morris had assaulted another woman.[2] Then she learned of at least two other victims of Morris in September 2008 when the criminal complaint was filed. Thus, by that date, plaintiff knew that Morris had sexually assaulted at least three, and perhaps four, women. Defendant argues that this knowledge triggered plaintiff's responsibility to make an inquiry regarding possible culpability of the Sheriff and the County. Plaintiff, however, argues that if she had then filed suit against the Sheriff and County based only on the information that Morris had assaulted three or four women, she

---

[2]Affidavit, Doc. 54-1, ¶ 7.

would have exposed herself to Rule 11 sanctions.

At first blush, plaintiff's argument has some logic to it. After all, even if Morris was a serial rapist, did that indicate that the Sheriff knew of Morris' predilections and ignored them? And could the Sheriff be expected, if interviewed by plaintiff or her attorney, to readily admit that he effectively condoned Morris' actions? Probably not. But defendants make a telling point – plaintiff never made the effort. As defendants acknowledge in their reply brief, the outcome might be different if the defendants had refused to answer plaintiff's inquiries, or lied to her. But the uncontroverted fact is that neither the Sheriff nor any other representative of the County withheld information or lied to plaintiff, because they never got the chance to do so. The Supreme Court of California stated it well: "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 1111 (Cal. 1988).[3]

There is no escaping the conclusion that plaintiff did not act with reasonable diligence in investigating whether or not the Sheriff and County had committed a separate tort against her. *At the latest*, the unsealing of the criminal complaint in September 2008 triggered her responsibility to make an inquiry. The one-year statute of limitations expired one year thereafter, in September or October 2009. Since this suit was not filed until February 2010, it is time-barred and must be dismissed. The motion for summary judgment filed by Otto

---

[3]Quoted in *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 731 (Tenn. App. 2008).

Purkey and Hamblen County, Tennessee, (Doc. 51), is **GRANTED**. Plaintiff's suit against these defendants is dismissed with prejudice.

The suit remains pending against the defendant Dexter Morris.

ENTER:

s/ Dennis H. Inman  
United States Magistrate Judge